**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | |
|---|---|
| Clint Rasschaert, Ed Risch, Pamela Schiller, Verna Schuna, and Eric Gedrose, individually and on behalf of the putative Classes, | Civil No. 12-3108 (DWF/JSM) |
| Plaintiffs, | |
| v. | **MEMORANDUM OPINION AND ORDER** |
| Frontier Communications Corporation; Frontier Communications of America, Inc.; Frontier Communications of Minnesota; Citizens Telecommunications Company of Minnesota, LLC; and Citizens Telecommunications Company of New York, | |
| Defendants. | |

Anna P. Prakash, Esq., E. Michelle Drake, Esq., Rebekah L. Bailey, Esq., and Matthew C. Helland, Esq., Nichols Kaster, PLLP, counsel for Plaintiffs.

Archis A. Parasharami, Esq., and Kevin Ranlett, Esq., Mayer Brown LLP; Bryan C. Keane, Esq., and Robert E. Cattanach, Esq., Dorsey & Whitney LLP, counsel for Defendants.

**INTRODUCTION**

This matter is before the Court on Defendants' Motion to Compel Arbitration and Dismiss Proceedings (Doc. No. 11) and Defendants' Motion to Dismiss (Doc. No. 18). For the reasons set forth below, the Court compels arbitration and denies Defendants' motion to dismiss.

## BACKGROUND

**I.     Parties and Claims**

Frontier Communications Corporation, Frontier Communications of America Inc., Frontier Communications of Minnesota, Citizens Telecommunications Company of Minnesota, LLC, and Citizens Telecommunications Company of New York (collectively, "Frontier") operate as a telecommunications company that provides Internet and phone services in rural areas across the country.  (Doc. No. 1, Compl. ¶ 2.)  Clint Rasschaert, Edward Risch, Pamela Schiller, Verna Schuna, and Eric Gedrose[1] (collectively, "Plaintiffs") are or were Frontier's customers, who subscribed to Frontier's Internet services.  (*Id.* ¶¶ 43-72.)

Plaintiff Rasschaert subscribed to Frontier's stand-alone, high-speed, DSL Internet service in February 2010 after seeing Frontier's online advertisements, which represented that the cost of service was $54.99.  (*Id.* ¶¶ 43-44.)  He subscribed to the service over the telephone, at which time he was told that Frontier's Internet Service would cost $54.99 per month.  (*Id.* ¶ 45.)  Rasschaert claims that Frontier did not quote any additional charges or fees for the service.  (*Id.*)  Rasschaert's bills, however, included charges for USF Contributions, 911/TELECOM/TAP fee, and an HSI surcharge.  (*Id.* ¶ 46.)

Plaintiff Risch subscribed to Frontier's phone and Internet service in 2005 over the telephone.  (*Id.* ¶¶ 48-49.)  In 2010, he "bundled" his telephone and Internet services with

---

[1]     The claims of former Plaintiff Justin Short have been dismissed without prejudice. (Doc. No. 10.)

satellite television from the Dish Network. (*Id.* ¶ 48.) The price quoted by Frontier in 2010 for the bundle was $99.99 per month; Risch was not quoted any additional charges or fees for Internet service. (*Id.* ¶ 49.) Still, Risch claims that his bills have always included charges for USF Contributions, 911/TELECOM/TAP fees, and an HSI Surcharge. (*Id.* ¶ 50.)

Plaintiff Schiller also subscribed to Frontier's Internet, telephone, and Dish network television service in 2005. (*Id.* ¶ 53.) In 2007, Plaintiff Schiller electronically clicked "I agree" to the version of Frontier's Terms and Conditions in effect at that time. (*Id.* ¶ 55.) When she renewed her bundle subscription in June 2011, she claims that Frontier did not disclose that she would be required to pay an HSI surcharge in addition to the stated service price. (*Id.* ¶ 56.) Schiller maintains that her bills for Frontier's services have always included charges for USF Contributions, 911 fees, and HSI Surcharges. (*Id.* ¶ 57.)

Plaintiff Schuna's account is listed in the name of her deceased husband, Dale Schuna. (*Id.* ¶ 61.) When Mr. Schuna passed away in 2010, Plaintiff Schuna assumed responsibility for paying the bills associated with the account. (*Id.*) Schuna added Internet service to her account, in approximately July 2010, by telephone, with her son's assistance. (*Id.* ¶ 63.) Schuna claims that the additional price quoted for Internet service did not include a $1.00 HSI Surcharge, yet the surcharge subsequently appeared on Schuna's bills. (*Id.* ¶¶ 63 & 65.) Several days after signing up for Internet service, Schuna also electronically clicked "I agree" to Frontier's Terms and Conditions online. (*Id.* ¶ 64.)

In December 2010, Plaintiff Gedrose subscribed to Frontier's stand-alone Internet service by telephone. (*Id.* ¶ 68.) Frontier quoted Gedrose $54.99 per month for the service, and did not quote any additional charges or fees. (*Id.* ¶ 69.) Gedrose also claims his bills included charges for USF Contribution, 911/TELECOM/TAP fees, and HSI Surcharges. (*Id.* ¶ 71.)

All Plaintiffs claim they were subject to an improper HSI Surcharge, which was not disclosed in Frontier's pricing for stand-alone or bundled Internet services. (*Id.* ¶¶ 80-81.) Additionally, Plaintiffs assert that Frontier improperly imposed a Federal USF (Universal Service Fund) Contribution on its bills for Internet services. (*Id.* ¶ 91.) Plaintiffs also contend that Frontier improperly collected 911, Telephone Access Program ("TAP") and Telecommunications Relay ("TELERELAY") surcharges from Internet-only customers, like Rasschaert. (*Id.* ¶¶ 93-94.)

Citing the alleged improper fees and surcharges imposed upon Frontier's customers, Plaintiffs have filed a putative class action against Frontier, asserting the following eight counts: two counts of breach of contract; fraud; violations of the Minnesota Consumer Fraud Act, Uniform Deceptive Trade Practices Act, and False Statements in Advertising Act; violation of New York's Deceptive Acts and Practices Law; and unjust enrichment.[2] (*Id.* ¶¶ 130-204.)

---

[2] The claims asserted in this case are the remaining, unresolved claims from the initial action filed in this Court, Civil No. 11-2963. A settlement agreement was reached with respect to the tax claims asserted in the original action. (Civ. No. 11-2963, Doc.
(Footnote Continued on Next Page)

## II.     Terms and Conditions

As evidenced by the exhibits attached to the Complaint, Plaintiffs received monthly bills that stated, in relevant part:

> ATTENTION FRONTIER HIGH SPEED INTERNET USERS
> Frontier is providing High-Speed Internet Service to its end user customers pursuant to the Terms and Conditions described at http://www.frontier.com/terms.  In the past, Frontier filed this information with the Federal Communications Commission (FCC).  As a result of recent FCC rulings, we are now providing High-Speed Internet service per these Terms and Conditions.  If you have any questions, please call the customer service number on your bill.

(Compl. Exs. 1-5.)

Plaintiffs continued to make use of Frontier's services after receiving these bills. In addition, Plaintiffs Schiller (in 2007) and Schuna (in 2010) had both confirmed their acceptance of Frontier's Residential High-Speed Internet Terms and Conditions by executing electronic signatures on Frontier's website. (Doc. No. 15, Brown Decl. ¶¶ 7-10 & Exs. 5, 12-14; Compl. ¶¶ 55, 64.)

Frontier's Residential High-Speed Internet Terms and Conditions are posted on Frontier's website (at www.frontier.com/terms).  (Doc. No. 16, Patten Decl. ¶ 2.)  The Terms and Conditions state: "**BY USING FRONTIER HIGH SPEED INTERNET SERVICES OR EQUIPMENT, YOU ARE AGREEING TO THESE TERMS AND**

---

(Footnote Continued From Previous Page)

No. 90.)  A final fairness hearing on the proposed settlement of those claims is scheduled for April 12, 2013, before the undersigned.  (*Id.*)

**CONDITIONS**." (*See, e.g., id.* ¶ 3, Ex. 1 ("Terms and Conditions") at 1 (emphasis in original).)

The Terms and Conditions further provide:

> **Our Right To Make Changes**
> **UNLESS OTHERWISE PROHIBITED BY LAW, WE MAY CHANGE PRICES, TERMS AND CONDITIONS AT ANY TIME BY GIVING YOU 30 DAYS NOTICE BY BILL MESSAGE, E-MAIL OR OTHER NOTICE, INCLUDING POSTING NOTICE OF SUCH CHANGES ON THIS WEB SITE, UNLESS THE PRICES, TERMS AND CONDITIONS ARE GUARANTEED BY CONTRACT.  YOU ACCEPT THE CHANGES IF YOU USE THE SERVICES AFTER NOTICE IS PROVIDED.**

(*See, e.g., id.* at 3 (emphasis in original).)

In September 2011, Frontier sent their customers (including Rasschaert, Schiller, Schuna, and Gedrose) a notice on their bills informing them that the Terms and Conditions for residential high-speed Internet had been revised to include an arbitration provision. (Doc. No. 15, Brown Decl. ¶¶ 6, 8, 11, 12 & Ex. 3 at 4, Ex. 9 at 4, Ex. 16 at 4, Ex. 20 at 4.)  The notice stated:

> As part of our Terms and Conditions of service, Frontier has recently instituted a binding arbitration provision to resolve customer disputes. This provision will become effective 45 days from the date of this bill.  Please refer to www.frontier.com or call Frontier 1-800-426-6404, option 3 for more information.

*Id.*  Plaintiffs Rasschaert, Schiller, Schuna, and Gedrose continued their service beyond the 45-day notice period. (*Id.* ¶¶ 6, 8, 11, 12 & Exs. 4, 10, 17, 21.)  There appears to be no dispute that Plaintiff Risch, however, terminated his service before the arbitration provision took effect.

6

Frontier then advised its customers in their January 2012 bills that, "effective immediately," Frontier had "revised the DISPUTE BY BINDING ARBITRATION provision in [Frontier's] service agreements," and Frontier referred its customers to the Terms and Conditions webpage online.  (*See, e.g.*, *id.* ¶¶ 6, 12 & Ex. 4 at 4, Ex. 21 at 4; *Compare* Patten Decl. Ex. 2 at 3, *with* Terms and Conditions at 3.)

The Terms and Conditions now include the following arbitration provision:

**Dispute Resolution By Binding Arbitration**

Frontier encourages You to contact our Customer Service department if You have concerns or complaints about your service or Frontier. Generally, customer complaints can be satisfactorily resolved in this way. If You are not able to resolve your concerns through our Customer Service department, You agree to **resolve all disputes through binding arbitration or a small claims court rather than lawsuits, jury trials, or class actions**.  Arbitration is more informal than a lawsuit.  Arbitration uses a neutral arbitrator instead of a judge or jury, allows for more limited discovery than in court, and is subject to very limited review by courts. Arbitrators can award the same damages and individual relief affecting individual parties that a court can award, including an award of attorneys fees if the law allows.

You and Frontier agree to arbitrate all disputes and claims between us including, but not limited to, all claims arising out of or relating to any aspect of our relationship, whether based in contract, tort, statute, fraud, misrepresentation or any other legal theory, that arose either before or during this or any prior Agreement, or that may arise after termination of this Agreement.  Notwithstanding the foregoing agreement, Frontier agrees that it will not use arbitration to initiate debt collection against You except in response to claims You have made in arbitration.  In addition, by agreeing to resolve disputes through arbitration, **You and Frontier agree to each unconditionally waive the right to a trial by jury or to participate in a class action, representative proceeding, or private attorney general action.**

Instead of arbitration, either party may bring an individual action in a small claims court for disputes or claims that are within the scope of the small claims court's authority.  In addition, you may bring any issues to the

attention of federal, state, or local agencies, including, for example, the Federal Communications Commission.  Such agencies can, if the law allows, seek relief against us on your behalf.  The Federal Arbitration Act governs the interpretation and enforcement of this provision, even after the agreement is terminated.  In person arbitrations will take place at a location that the AAA selects in the state of your primary residence unless You and Frontier agree otherwise.  In addition, the arbitration will be governed by the Commercial Arbitration Rules and the Supplementary Procedures for Consumer Related Disputes (collectively, "AAA Rules") of the American Arbitration Association ("AAA") and will be administered by the AAA.  Procedure, rule and fee information is available from the AAA online at adr.org, by calling the AAA at 1-800-778-7879, or by calling Frontier at 1-877-462-7320, option 3.  The arbitrator is bound by the terms of this Agreement.  All issues are for the arbitrator to decide, except that issues relating to the scope and enforceability of the arbitration provision are for the court to decide.  If your claim is for $10,000 or less, You may choose whether the arbitration will be conducted solely on the basis of documents submitted to the arbitrator, through a telephonic hearing, or by an in person hearing as established by the AAA Rules.  If your claim exceeds $10,000, the right to a hearing will be determined by the AAA Rules.  Regardless of the manner in which the arbitration is conducted, the arbitrator shall issue a reasoned written decision sufficient to explain the essential findings and conclusions on which the award is based.

Frontier agrees to pay your AAA filing, administration, and arbitrator fees for claims for damages of up to $10,000 and for claims for non-monetary relief up to the value of $10,000, as measured from either your or Frontier's perspective.  In addition, Frontier will not pay your share of the AAA fees if the arbitrator finds that either your claim or the relief sought is frivolous or brought for an improper purpose, as measured by the standards of Federal Rule of Civil Procedure 11(b).

If Frontier offers to settle your dispute prior to appointment of the arbitrator and You do not accept the offer, and the arbitrator awards You an amount of money that is more than Frontier's offer but less than $5000, then Frontier agrees to pay You double the arbitrator's award up to, but not more than, $5000.  If Frontier does not offer to settle your dispute prior to appointment of the arbitrator, and the arbitrator awards You an amount of money, then Frontier agrees to pay You double the arbitrator's award up to, but not more than, $5000.  Although Frontier may have a right to an award of attorneys' fees and expenses if it prevails, Frontier agrees that it will not seek such an award.

> You and Frontier agree to seek only such relief—whether in the form of damages, an injunction, or other non-monetary relief—as is necessary to resolve any individual injury that either You or Frontier have suffered or may suffer.  In particular, if either You or Frontier seek non-monetary relief, such relief must be individualized and may not affect individuals or entities other than You or Frontier.  **You and Frontier agree that we each may bring claims against the other only in an individual capacity and not as a plaintiff or class member in any purported class, representative, or private attorney general proceeding.**  The arbitrator may not consolidate more than one person's claims, and may not otherwise preside over any form of a class, representative, or private attorney general proceeding.  **This requirement that claims be brought in binding arbitration only in an individual capacity and not as a representative, private attorney general, or class member is nonseverable.  If this requirement is found to be unenforceable, then the entirety of this arbitration provision shall be null and void.**  Further, an arbitrator's award and any judgment confirming it shall apply only to that specific case and cannot be used in any other case except to enforce the award itself.
>
> Notwithstanding any provision in this Terms and Conditions to the contrary, we agree that if Frontier makes any change to this arbitration provision, You may reject that change and require Frontier to adhere to the language in this provision.  By rejecting any future change, You are agreeing that You will arbitrate any dispute between us in accordance with the language of this provision.

(*See* Terms and Conditions at 2-3 (emphasis in original).)

## DISCUSSION

### I.     Motion to Compel Arbitration

Frontier brings its motion to compel arbitration pursuant to the Federal Arbitration Act ("FAA").  The FAA provides that written agreements to arbitrate "shall be valid, irrevocable, and enforceable."  9 U.S.C. § 2.  Frontier asks the Court to dismiss the proceedings because the present dispute is governed by a written arbitration agreement. In determining whether to compel arbitration, the Court must determine:  (1) whether a valid agreement to arbitrate exists between the parties; and (2) whether the specific

9

dispute is within the scope of that agreement.  *Pro Tech Indus., Inc. v. URS Corp.*, 377 F.3d 868, 871 (8th Cir. 2004).  There is a strong presumption in favor of arbitration and any doubts concerning arbitration rights should be resolved in favor of arbitration.  *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983).

Frontier contends that Plaintiffs Rasschaert, Schiller, Schuna, and Gedrose should be compelled to arbitrate their disputes pursuant to an arbitration agreement.  Frontier claims that it notified Plaintiffs that an arbitration provision was being added to its Terms and Conditions, and those Plaintiffs, who chose not to terminate their service with Frontier, are thus bound by the arbitration clause.  Plaintiffs Rasschaert, Schiller, Schuna, and Gedrose argue, however, that Frontier cannot conclusively demonstrate that those Plaintiffs, in fact, assented to the arbitration provision when there is no evidence that they read or received the full text of the Terms and Conditions as revised.

The Court first addresses the issue of whether a valid agreement to arbitrate exists.  On the facts before the Court, this question is a close one.

Plaintiffs Rasschaert and Gedrose, who ordered Internet services by telephone, claim that they had neither actual nor constructive knowledge of Frontier's Terms and Conditions prior to purchasing Internet services.  Plaintiffs Schiller and Schuna appear to concede that they initially accepted Frontier's written Terms and Conditions online, however, Schiller and Schuna maintain that they did not receive sufficient notice of, or assent to, the arbitration provision added to those Terms and Conditions.  (Doc. No. 35 at 29-34.)  While it is true that the arbitration clause was not provided in full to Plaintiffs in their bills, all four Plaintiffs received notice on their bills (the first bill for Rasschaert

and Gedrose) that the arbitration provision would be added to the terms of service, and those Plaintiffs continued to subscribe to Frontier's services.  Plaintiffs were also made aware on a monthly basis that Frontier's services were governed by Frontier's Terms and Conditions, available on a particular webpage.

Facilitating customer payment and subscription before the full terms of service are revealed is not an uncommon business practice.  *See Hill v. Gateway 2000, Inc.*, 105 F.3d 1147, 1149 (7th Cir. 1997) ("Payment preceding the revelation of full terms is common for air transportation, insurance, and many other endeavors.")  In fact, most courts that have considered the issue "have upheld arbitration and forum selection clauses in so-called 'clickwrap' or 'shrinkwrap' form contracts," which occur "when the terms are provided online, or only after plaintiffs have manifested assent."  *Siebert v. Amateur Athletic Union of the U.S., Inc.*, 422 F. Supp. 2d 1033, 1040 (D. Minn. 2006); *see also Wold v. Dell Fin. Servs., L.P.*, 598 F. Supp. 2d 984, 987 (D. Minn. 2009) ("Courts routinely enforce so-called 'shrinkwrap' accept-or-return arbitration agreements.")  The Court finds that such a practice does not, in and of itself, render an arbitration provision invalid.

What presents a closer question, however, is whether a change-in-terms provision of a business's terms of service permits that business to unilaterally add an arbitration clause to its Terms and Conditions, where those Terms and Conditions contained no arbitration provision at the outset.  It appears that the Minnesota courts have said little to nothing on this issue in the context of consumer contracts.  With respect to unilateral employment contracts, however, Minnesota seems to permit this type of change.  *See*

*Roberts v. Brunswick Corp.*, 783 N.W.2d 226, 232-33 (Minn. Ct. App. 2010) (noting that, if a contract existed, the employer "effectively modified it" pursuant to a change-in-terms clause, and employees "had knowledge of the modifications" and "accepted the modifications because [they] continued to work"); *see also Pershern v. Fiatallis N. Am., Inc.*, 834 F.2d 136, 138 (8th Cir. 1987) ("Under Minnesota law, at-will employment contracts may be modified or replaced by unilateral agreements made according to standard contract law principles after employment has begun.").

Courts in other circuits have shed more light on the subject of unilateral amendments to consumer contracts. The Fifth Circuit, for example, has explicitly held that a change-in-terms provision permits amendment to require dispute resolution by arbitration. *See*, *e.g.*, *Bank One, N.A. v. Coates*, 125 F. Supp. 2d 819, 831 (S.D. Miss. 2001) ("Given, then, that the original cardholder agreement permitted amendments, the arbitration provision is not rendered unenforceable simply by virtue of the fact that Bank One undertook to add the arbitration provision via amendment."), *aff'd*, 34 F. App'x 964 (5th Cir. 2002); *see also Iberia Credit Bureau, Inc. v. Cingular Wireless LLC*, 379 F.3d 159, 173-74 (5th Cir. 2004) ("The change-in-terms provisions in the contracts before us do not render the contracts' obligations illusory. The notice of the change in terms can be understood as an invitation to enter into a relationship governed by the new terms. The customer then accepts the new terms by continuing to use the service.").

Notably, Plaintiffs Rasschaert, Schiller, Schuna, and Gedrose have also failed to introduce any evidence that they unequivocally denied that an agreement to arbitrate was formed. *See Doctors' Assocs., Inc. v. Jabush*, 89 F.3d 109, 114 (2d Cir. 1996) ("To

12

establish a genuine issue entitling a party [resisting arbitration] to a jury trial, an unequivocal denial that the agreement to arbitrate had been made is needed, and some evidence should be produced to substantiate the denial.").

Moreover, and most importantly, not only did Frontier provide monthly notice to Plaintiffs that their Internet service was provided "pursuant to the Terms and Conditions" available online (Compl. Exs. 1-5), but Plaintiffs were also given sufficient and explicit notice in their bills that an arbitration clause would be added to those Terms and Conditions of service. Specifically, Frontier notified Plaintiffs in their September 2011 bills that, "[a]s part of [Frontier's] Terms and Conditions of service," Frontier had "recently instituted a binding arbitration provision to resolve customer disputes," which would "become effective 45 days from the date of [that] bill." (Brown Decl. ¶¶ 6, 8, 11, 12 & Ex. 3 at 4, Ex. 9 at 4, Ex. 16 at 4, Ex. 20 at 4.) Thus, Plaintiffs had constructive, if not actual, notice that an arbitration clause would be added to Frontier's Terms and Conditions. *Contra Specht v. Netscape Commc'ns Corp.*, 306 F.3d 17, 31 (2d Cir. 2002) ("[R]eceipt of a physical document containing contract terms or notice thereof is frequently deemed, in the world of paper transactions, a sufficient circumstance to place the offeree on inquiry notice of those terms."). The notice further provided a telephone number for customers to call for information about the arbitration provision; there is no evidence, however, that Plaintiffs Rasschaert, Schiller, Schuna, or Gedrose contacted Frontier to dispute the change in terms. Instead, despite the notice, those Plaintiffs continued their service with Frontier. The Court finds that Plaintiffs Rasschaert, Schiller, Schuna, and Gedrose's failure to terminate service despite the notice of the addition of

the arbitration provision constituted acceptance of the change in terms—namely the addition of the arbitration clause. *See Hill,* 105 F.3d at 1149 ("A vendor, as master of the offer, may invite acceptance by conduct, and may propose limitations on the kind of conduct that constitutes acceptance. A buyer may accept by performing the acts the vendor proposes to treat as acceptance.").

As such, the Court rejects those Plaintiffs' claim that, because their bills did not include the language of the Terms and Conditions, and because those Plaintiffs were not provided with the full text of the arbitration clause, that the arbitration provision is therefore invalid. In light of the case law on this subject, and the presumption in favor of arbitration, the Court finds that a valid arbitration agreement existed between each of Plaintiffs Schiller, Schuna, Rasschaert, and Gedrose and Frontier.

The Court next considers whether the present dispute is within the scope of the arbitration agreement. The Terms and Conditions state, in relevant part:

> You and Frontier agree to arbitrate all disputes and claims between us including, but not limited to, all claims arising out of or relating to any aspect of our relationship, whether based in contract, tort, statute, fraud, misrepresentation or any other legal theory, that arose either before or during this or any prior Agreement, or that may arise after termination of this Agreement.

(Terms and Conditions at 2.) The instant dispute thus falls squarely within the arbitration provision.

The Court concludes that a valid agreement to arbitrate exists between Plaintiffs Rasschaert, Schiller, Schuna, and Gedrose and Frontier, and those Plaintiffs' claims fall

within the scope of the arbitration provision. Accordingly, the claims asserted by Plaintiffs Rasschaert, Schiller, Schuna, and Gedrose are subject to arbitration.

## II. Motion to Dismiss

While Frontier concedes that Plaintiff Risch is not bound by an arbitration agreement because he terminated his service before the arbitration provision added to Frontier's Terms of Service became effective, Frontier maintains that Risch's claims should nevertheless be dismissed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

In deciding a motion to dismiss pursuant to Rule 12(b)(6), a court assumes all facts in the complaint to be true and construes all reasonable inferences from those facts in the light most favorable to the complainant. *Morton v. Becker*, 793 F.2d 185, 187 (8th Cir. 1986). In doing so, however, a court need not accept as true wholly conclusory allegations, *Hanten v. Sch. Dist. of Riverview Gardens*, 183 F.3d 799, 805 (8th Cir. 1999), or legal conclusions drawn by the pleader from the facts alleged, *Westcott v. City of Omaha*, 901 F.2d 1486, 1488 (8th Cir. 1990). A court may consider the complaint, matters of public record, orders, materials embraced by the complaint, and exhibits attached to the complaint in deciding a motion to dismiss under Rule 12(b)(6). *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999).

To survive a motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007). Although a complaint need not contain "detailed factual allegations," it must contain facts with enough specificity "to raise a right to relief above the speculative

level." *Id*. at 555. As the United States Supreme Court recently reiterated, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," will not pass muster under *Twombly*. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (citing *Twombly*, 550 U.S. at 555). In sum, this standard "calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the claim]." *Twombly*, 550 U.S. at 556.

Frontier claims that Plaintiff Risch's fraud and consumer protection claims are barred by the filed-rate doctrine and that Risch's claims are otherwise insufficiently pled. The Court finds that Risch has adequately pled claims arising from Frontier's alleged miscalculation and improper imposition of government fees on his monthly bills. To the extent Frontier contends that the Internet services provided to its customers are subject to FCC regulation, the Court finds Frontier's argument to lack merit. *See FTC v. Verity Int'l, Ltd.*, 443 F.3d 48, 62-63 (2d Cir. 2006) (holding that the filed-rate doctrine did not apply where defendants pointed to "no tariff that covers the actual service rendered" to users of their information services, and noting that "mixed or hybrid" telecommunications and information services "are information services and not telecommunications services"). The Court concludes that, at this early stage, Plaintiff Risch has articulated viable claims against Frontier. The motion to dismiss is thus properly denied.

## ORDER

Based upon the foregoing, **IT IS HEREBY ORDERED** that:

    1.    Defendants' Motion to Compel Arbitration and Dismiss Proceedings (Doc. No. [11]) is **GRANTED IN PART** and **DENIED IN PART** as follows:

    a.    To the extent Defendants seek to compel arbitration of Clint Rasschaert, Pamela Schiller, Verna Schuna, and Eric Gedrose's claims, the motion is **GRANTED**.

    b.    To the extent Defendants seek dismissal of Clint Rasschaert, Pamela Schiller, Verna Schuna, and Eric Gedrose's claims, the motion is **DENIED**.

    c.    Clint Rasschaert, Pamela Schiller, Verna Schuna, and Eric Gedrose's claims are subject to arbitration.

    d.    Clint Rasschaert, Pamela Schiller, Verna Schuna, and Eric Gedrose's claims are **STAYED** pending the outcome of arbitration.

    e.    The Court expressly retains jurisdiction over this case.

    f.    This order shall have no effect on Plaintiff Ed Risch's claims in this matter, which shall proceed before this Court.

    2.    Defendants' Motion to Dismiss (Doc. No. [18]) is **DENIED**.

Dated:  March 19, 2013        s/Donovan W. Frank
                                  DONOVAN W. FRANK
                                  United States District Judge